## IN THE UNITED STATES DISTRICT COURT
## NOTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**TONIA DEE HINOTE,**

    **Plaintiff,**

  **v.**                                **CASE NO. 3:23-cv-8331**

**WALTON COUNTY, FLORIDA,
the WALTON COUNTY BOARD OF COUNTY
COMMISSIONERS, COMMISSIONER
MICHAEL BARKER, in his individual capacity,
COMMISSIONER DANNY GLIDEWELL, in his
individual capacity, and COMMISSIONER
WILLIAM MCCORMICK, in his individual
capacity.**

                                    **JURY TRIAL DEMANDED**

    **Defendants.**
_____/

## COMPLAINT FOR DAMAGES, DECLARATORY RELIEF AND ATTORNEYS' FEES AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff TONIA DEE "DEDE" HINOTE ("Hinote"), by and through her undersigned counsel, and files this Complaint for Damages, Declaratory Relief and Attorneys' Fees and Demand for Jury Trial against Defendants the Walton County Board of County Commissioners (the "Board"), Commissioner Michael Barker ("Barker"), in his individual capacity, and Commissioner Danny Glidewell ("Glidewell"), in his individual capacity, and

Commissioner William McCormick ("McCormick"), in his individual capacity, respectfully showing the Court as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      This action arises in the context of a former employment relationship between Hinote and the County.

2.      Hinote initially became employed with Walton County, Florida "the County" in 1986 as part of its summer youth program for $3.35 per hour. Since that time, Hinote served the County in a number of different capacities, including the roles of Executive Assistant, Assistant County Administrator, and ultimately Deputy County Administrator,

3.      During Hinote's employment she received multiple compensation increases, awards, and special recognition for her achievements and service to the County at a Commission meeting.

4.      Hinote served the County for over 35 years without ever receiving a negative performance evaluation.

5.      In July 2021, the County and the Board wrongfully terminated another female employee, Assistant County Attorney Heather Hinote.

6.      In November 2021, Commissioner Danny Glidewell intimidated and threatened Hinote because he was upset that Suzanne Harris posted on social media about the new Public Information Officer's hiring.

7.      Hinote had nothing to do with Harris' post, which was ultimately incorrect because the individual had accepted the position of Media Specialist, not Public Information Officer.

8.      Following this confrontation, Commissioners Barker and Glidewell would no longer meet with Hinote regarding Commission meetings and agenda planning.

9.      In January 2022, Glidewell telephoned Hinote to intimidate and harass her regarding decisions she made regarding the Parks and Recreation Department regarding a work crew.

10.      Hinote reversed her decision based on this telephone call and out of fear for losing her job.

11.      In February 2022, Hinote met with Commissioner Trey Nick to ask if he had issues with her job performance and to tell him that she was concerned for her job.

12.      Commissioner Nick told Hinote he did not have any issues with her job performance.

13.      In February 2022, Hinote met with Commissioner Barker to ask if he had issues with her job performance.

14.      Commissioner Barker told her he did not, but that there was a mole in the County's administration, and they needed to get tough.

15.    In February 2022, Hinote met with Commissioner McCormick to ask if he had issues with her job performance.

16.    Commissioner McCormick told her he did not, and assured Hinote that her employment with the County was not in jeopardy.

17.    On March 17, 2022, the County terminated Hinote's employment and had her escorted by a Sheriff's Deputy to her house to retrieve the County's vehicle.

18.    The County did not permit Hinote to cash out her earned Paid Time Off ("PTO"), and immediately cut off her insurance coverage and all other benefits at the time of her termination.

19.    The County allowed other male employees to resign in lieu of termination, despite engaging in alleged misconduct.

20.    The County agreed to severance payments, permitted PTO payouts, continued benefits, and allowed for resignations in lieu of termination for male employees.

21.    Multiple male commissioners have violated County policies and procedures without being subjected to disciplinary action.

22.    In 2013, Stan Sunday, former Deputy County Administrator earned $102,000.00 per year.

23.    In 2013, Hinote earned $88,000.00 per year as a Deputy County

Administrator.

24.    Hinote and Sunday worked in the same position under the same job description, with the same employment responsibilities.

25.    Both Hinote and Sunday were approved to utilize a take-home County vehicle for work.

26.    On August 2, 2021, the County agreed (not in an open public meeting) to place Sunday on permanent leave until September 2022.

27.    From August 8, 2021, until September 2022, Sunday did not show up for work at the County.

28.    From August 8, 2021, until September 2022, the County allowed Sunday to use all of his PTO, remain on the County payroll, receive cost of living increases, accrue additional leave time, continue receive insurance, and continue to receive Florida Retirement System contributions paid by the County.

29.    Hinote's termination occurred as a result of prior unlawful involvement and conspiratorial acts of Commissioners Barker, Glidewell, and McCormick) for pretextual reasons in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. §§ 1983, 1985, the United States Constitution, and in direct violation of County policies.

30.    The reasons for the termination provided by the County and Board subsequently during the EEOC investigation process and otherwise are blatantly

false and pretextual and do not adhere to the County and Board's own written policies.

31.    Hinote was subjected to numerous other uncomfortable actions by the County's Commissioners, in what many recognize is a "good ole' boy" environment.

32.    Hinote files this action to remedy the unlawful treatment and adverse employment action suffered by her which culminated in her being unlawfully, discriminatorily, and retaliatorily terminated by Defendants for pretextual reasons in violation of Title VII, 42 U.S.C. §§ 1983, 1985, the United States Constitution, and County policy.

33.    Hinote seeks all compensatory damages and pay allowed by law in addition to punitive damages that would punish Defendants for their knowing, intentional, willful, and reckless disregard of clearly established constitutional and statutory rights.

34.    Hinote further seeks declaratory relief pursuant to 28 U.S.C. § 2201-2202 that the practices of Defendants described in this Complaint exist and that they are unlawful, an award of costs and attorney's fees under 42 U.S.C. § 1988, and such other this Court deems just and proper.

## THE PARTIES, JURISDICTION, AND VENUE

35.    Plaintiff Hinote is a female citizen of the State of Florida and a

resident of Walton County, Florida.

36.     At all material times, Hinote was employed by the County as a Deputy County Administrator.

37.     Hinote is a member of a protected class, female, and submits herself to the jurisdiction of this Court.

38.     Defendant Walton County, Florida is a political subdivision of the State of Florida, governed by its Constitution and Florida Statutes. Art VII, Sec. 1, Fla. Const; Ch. 125, Fla. Stat. At all material times, the County has been an "employer" as that term is used and defined under applicable law.

39.     At all times relevant to Hinote's claims, the County employed fifteen (15) or more employees for each working day in at least twenty (20) or more calendar weeks, including Hinote.

40.     The "Board" refers to the Board of County Commissioners, the governing body of Walton County and serves as the legislative branch of the County Government. The Board consists of five (5) elected County Commissioners which at all material times, including Commissioners McCormick, Barker, and Glidewell.

41.    Defendant Barker has, at all material times, been a Walton County resident and Commissioner and presently served as the Board's Chairman. At all times relevant to Barker's acts and omissions as alleged in this Complaint, Barker acted under the color of law. He is subject to liability under 42 U.S.C. §§1983, 1985. Barker is sued in his individual capacity.

42.    Defendant Glidewell has, at all material times, been a Walton County resident and Commissioner. At all times relevant to Glidewell's acts and omissions as alleged in this Complaint, Glidewell acted under the color of law. He is subject to liability under 42 U.S.C. §§1983, 1985. Glidewell is sued in his individual capacity.

43.    Defendant McCormick has, at all material times, been a Walton County resident and Commissioner. At all times relevant to Glidewell's acts and omissions as alleged in this Complaint, McCormick acted under the color of law. He is subject to liability under 42 U.S.C. §§1983, 1985. Glidewell is sued in his individual capacity.

44.    This Court has jurisdiction over all causes of action herein pursuant to 28 U.S.C. § 1331 because the claims asserted arise under the Constitution, laws, or treaties of the United States.

45.    Jurisdiction to grant a declaratory judgment is conferred by 28 U.S.C.

§§ 2201-02.

46.     Venue in this action is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in the Pensacola Division of the United States District Court for the Northern District of Florida.

**CONDITIONS PRECEDENT**

47.     Hinote has satisfied all conditions precedent to filing this action, including filing a Charge of Discrimination on March 30, 2022 for sex discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC") within 180 days of the last discriminatory and/or retaliatory act(s) and receiving a Notice of Right to Sue ("Notice"). Attached as exhibit "A".

48.     Hinote timely filed this action within ninety (90) days thereafter.

**FACTUAL ALLEGATIONS**

**Hinote's Employment With the County and Outstanding Legal Performance**

49.     Hinote first became employed by the County over thirty (30) years ago and worked her way up through a number of positions, ultimately becoming the Deputy County Administrator.

50.     Hinote reported directly to, and at the pleasure of the County

9

Administrator.

51.    At all times during Hinote's employment, Hinote faithfully and diligently performed her duties to the County and Board.

52.    Throughout her employment with the County, Hinote was never disciplined or reprimanded, nor did she ever receive any poor performance evaluations or corrective counseling concerning her work.

**The County's Powers, Limitations, and Policies Relative to Hinote**

53.    The baseless justifications provided to date for Hinote's termination by Defendants as discussed further herein are pretextual as evidenced, in part, by Defendants' failure to follow their own numerous applicable policies set forth as follows:

54.    Throughout Hinote's employment with the County, neither the Board or its Commissioners had authority to terminate her employment. In fact, the County's written policies mandate that:

*Scope of Authority and Responsibility*

*No Walton County Board Commissioner, acting on their own individual authority, shall hire, transfer, raise the pay of, demote or terminate the employment of any Walton County Board employee other than their respective aides or executive assistants.*

(italics added). Walton County Board of County Commissioners Human Resources Policy Manual ("Board Policy Manual"), Sec. 1, p. 5.

10

55.     Further, pursuant to the Walton County Personnel and Policy Manual (Walton Co. Policy Manual"):

**AUTHORITY OF COMMISSIONERS**

*No commissioner, acting on his or her own individual authority, may hire, transfer, raise the pay of, demote or terminate the employment of any county employee other than their respective aides or executive assistants. Such actions can only be accomplished after the approval of the appropriate Division Director or the County Administrator in accordance with established personnel policy.*

(italics added). Walton County Policy Manual, Ch. 25, p.27.

56.     At all times material hereto, the Board had direct hiring and termination authority over only three (3) County employees, the County Administrator, the County Attorney, and the Tourist Development Council ("TDC") Executive Director. As described herein, Board Commissioners were improperly and intimately involved in the termination of Hinote for discriminatory and retaliatory reasons.

57.     Further, pursuant to the Board Policy Manual:

**Dismissal for Unsatisfactory Service**

*Prior to any proceedings to dismiss an employee, the department director shall contact the Director of HR and review that employee's personnel file. A department director may recommend dismissal of any employee for just cause. Just cause shall include, but not limited to, negligence, incompetence, or inefficiency in the performance of assigned duties; repeated and/or gross substandard performance of assigned duties; insubordination; violation of rules, regulations, and policies; conduct unbecoming a public employee; unauthorized use,*

11

*possession, or under the influence of alcohol or drugs while on duty; or conviction of a crime. County Administration and the Director of HR shall approve all terminations for cause prior to the termination occurring.*

(italics added).  Board Policy Manual, Policy 12.3, p. 135.

58.    Moreover, the Walton Co. Policy Manual contains policies in Ch. 11 regarding disciplinary actions, including a progressive discipline policy, stating, in pertinent part:

*It is the policy of Walton County to: 1) Provide a well-defined system of discipline that sets forth standards of conduct and specific guidelines for disciplinary actions and which will be applied to all employees equitably, without bias or prejudice.*

*<u>Section C – Application of Disciplinary Action</u>*
*1) Although internal consistency in administering discipline is desirable, numerous factors should be considered in determining the appropriate level of discipline to be assessed at each successive step.*
*2) Some of the factors involved include time intervals between offenses, effectiveness of prior disciplinary actions, willingness to improve, overall work performance, job attitudes, and disciplinary actions previously taken with other comparable employees for similar offenses.*
*3) Some infractions may be more serious in one case, because of the employee's responsibilities than in another case.*
*4) A repetition of the same offense or other serious offenses indicates that more severe disciplinary measures should be administered.*
*5) Certain offenses are of such a serious nature that immediate discharge upon first offense is applicable. Prior to any action to dismiss an employee, the department director will contact the Human Resources Director and review that personnel file.*
*6) When circumstances permit, department directors are encouraged to pursue a philosophy of "progressive discipline" by administering gradually increasing disciplinary actions for each successive instance of employee misconduct. Each level of progressive discipline shall be fully documented for inclusion in the employee's human resources file.*

12

*7) Incidents of misconduct may differ in individual cases from somewhat similar incidents, and the county retains the right to treat each incident on an individual basis without creating a precedent for cases that arise in the future.*

*8) These provisions are not to be construed as a limitation upon the retained rights of the County, but are to be used as a guide.*

(italics added).  Walton Co. Policy Manual, Ch. 11, pp. 19-20.

59.    Additionally, the Walton Co. Policy Manual specifically mandates there be a pre-disciplinary hearing in County disciplinary actions above a written reprimand, which Hinote was never afforded:

*When a supervisor has determined that an employee's actions may require discipline above a written reprimand, a pre-disciplinary hearing will be scheduled and the employee notified in writing at least 24 hours in advance. At the hearing, the supervisor explains the charges and the type of disciplinary action being considered. The employee will be given an opportunity to offer any contrary evidence, explanation and/or comments. The employee is notified of the decision after management discusses and decides upon the appropriate disciplinary action.*

(italics added).  Walton Co. Policy Manual, Ch. 12, Sec. B, p. 21.

60.    Defendants did not adhere to its own policies and procedures when it subjected Hinote to discriminatory treatment and retaliatory termination.

61.    Further notable is the fact that in 2015 a Walton County Grand Jury (the "Grand Jury") was impaneled to, in part, review the operations and policies of the Walton County Government including the Board.

62.    As part of the Grand Jury's Report, the Board was admonished

13

relative to Commissioners' involvement in hiring and firing decisions of employees for which they had no authority over, failure to follow policies and procedures, and disparate treatment afforded to certain employees who had certain personal relationships with Commissioners.

63.    As shown further herein, Defendants have, as a matter of continued custom and practice, wholly failed to follow their own written policies and regulations concerning the discriminatory and retaliatory termination of Hinote given certain Commissioners' direct and unlawful involvement in Hinote's termination and Defendants' utter disregard for their own policies and procedures contrary even to the admonishment of the Commision just years prior by the Grand Jury.

64.    Hinote rightfully feared for her job security despite the false assurances she previously received.

65.    Barker and Glidewell were also violating Sunshine Laws[1] during the relevant period, by violating prohibitions against County Commissioners directing day to day operations of the County, violating County personnel policies, and discriminating and retaliating against Hinote.

---

[1] Written discovery and depositions in this matter will reveal and confirm numerous Sunshine Laws violations by County's Commissioners and other bad actors in this case. Hinote fully reserves the right to amend or seek leave to amend this Complaint to add such claims as provided for in §286.011(4), Fla. Stat.

## COUNT I – RETALIATION IN VIOLATION OF TITLE VII

### (AGAINST THE COUNTY AND BOARD)

66.    Hinote incorporates Paragraphs 1-81 herein by reference as if fully set forth herein.

67.    The County is an employer as defined in Title VII.

68.    Hinote is an employee as defined in Title VII.

69.    Hinote is a member of a protected class under Title VII.

70.    Hinote engaged in a protected activity under Title VII by standing up to the retaliatory conduct from the County and Commissioners whom sought to intimidate her throughout her employment.

71.    Hinote suffered a materially adverse employment action when the County terminated her employment on March 17, 2022.

72.    The County was aware of Hinote's statutorily protected activity within the meaning of Title VII when it subjected her to the adverse employment action of termination.

73.    The adverse employment action was a direct and proximate result of the protected activity in which Hinote engaged in.

74.    The County subjected Hinote to adverse employment action because of her statutorily protected activity within the meaning of Title VII.

75.    In taking adverse employment action against Hinote because of her statutorily protected activity, the County intentionally discriminated against Hinote with respect to the compensation, terms, conditions, or privileges of her employment.

76.    As a proximate result of such intentional discriminatory acts by the County, Hinote has suffered damages.

77.    The County's conduct alleged herein was purposeful with malice or reckless indifference to Hinote's protected rights.

78.    As a direct result of the County's actions, Hinote has suffered lost wages, future income, opportunities for advancement, and other pecuniary and non-pecuniary damages (including emotional harm) in amounts to be determined at trial.

## COUNT II– SEX DISCRIMINATION PURSUANT TO TITLE VII

### (AGAINST THE COUNTY AND BOARD)

79.    Hinote incorporates Paragraphs 1-81 herein by references as if fully set forth herein.

80.    As described above, the County terminated Hinote because of her sex in violation of Title VII.

16

81.    The County deprived Hinote of her right to employment through its discriminatory conduct.

82.    The County is an employer as defined in Title VII.

83.    Hinote is an employee as defined in Title VII.

84.    Hinote if a member of a protected class as a female.

85.    The County took adverse employment actions against Hinote, including terminating her employment without justifiable cause and for pretextual reasons.

86.    Hinote was exceptionally qualified to do her job as Deputy County Administrator for the County, having been employed with the County for over thirty (30) years and never receiving any reprimands, negative performance reviews or counseling.

87.    Hinote at all times performed her duties owed to the County faithfully and in accordance with the standard set forth by the County.

88.    The County treated similarly situated male employees of the County more favorably than Hinote.

89.    The County terminated Hinote's employment because of her gender in violation of Title VII.

90.    The County's conduct alleged herein was purposeful with malice or reckless indifference to Hinote's protected rights.

91.    As a direct result of the County's actions, Hinote has suffered lost wages, future income, opportunities for advancement, and other pecuniary and non-pecuniary damages (including emotional harm) in amounts to be determined at trial.

## COUNT III– DISPARATE TREATMENT DUE TO GENDER PURSUANT TO TITLE VII

### (AGAINST THE COUNTY AND BOARD)

92.    Hinote incorporates Paragraphs 1-81 herein by references as if fully set forth herein.

93.    As described above, the County treated Hinote differently because of her sex in violation of Title VII.

94.    The County is an employer as defined in Title VII.

95.    Hinote is an employee as defined in Title VII.

96.    Hinote if a member of a protected class as a female.

97.    The County took adverse employment actions against Hinote, including terminating her employment without justifiable cause and for pretextual reasons.

98.    Hinote was exceptionally qualified to do her job as Deputy County Administrator for the County, having been employed with the County for over

thirty (30) years and never receiving any reprimands, negative performance reviews or counseling.

99.    Hinote at all times performed her duties owed to the County faithfully and in accordance with the standard set forth by the County.

100.    The County treated similarly situated male employees of the County more favorably than Hinote.

101.    The County compensated Hinote at a lower rate during her employment because

102.    The County's conduct alleged herein was purposeful with malice or reckless indifference to Hinote's protected rights.

103.    As a direct result of the County's actions, Hinote has suffered lost wages, future income, opportunities for advancement, and other pecuniary and non-pecuniary damages (including emotional harm) in amounts to be determined at trial.

## COUNT IV – GENDER DISCRIMINATION AND RETALIATION IN VIAOLATION OF § 1983
## FOURTEENTH AMENDMENT EQUAL PROTECTION

### (AGAINST THE COUNTY AND BOARD)

104.    Hinote incorporates Paragraphs 1-81 herein by references as if fully set forth herein.

105.    42 U.S.C. §1983 protects against the "deprivation of rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

106.    Hinote is a female and part of a protected class under the Equal Protection Clause.

107.    The County are "persons" within the meaning of 42 U.S.C. §1983.

108.    The County is a political subdivision of the State of Florida. The County is liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the County caused the violations of Hinote's constitutional rights, and/or because County officials with final policymaking authority violated Plaintiff's constitutional rights. See *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

109.    Although she had a history of positive performance evaluations and exemplary work performance, Hinote was terminated from her position on July 20, 2021. This termination was motivated in whole or in part by Hinote's gender and in retaliation for Hinote's protected activity.

110.    The County's retaliatory and discriminatory practices have caused Hinote harm, including severe emotional distress and lost wages and benefits.

111.    The County acted under color of law when it directly deprived Hinote of her equal protection rights by intentionally discriminating against her because of her sex and retaliated against her for engaging in protected activity.

112.    As a direct and proximate result of the County's unlawful actions, Hinote has suffered the damages outlined herein.

113.    Accordingly, the County has violated Hinote's rights as protected by

42 U.S.C. § 1983.

## COUNT V – SECTION 1983 AND EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

### (AGAINST BARKER)

114.   Hinote incorporates Paragraphs 1-81 herein by references as if fully set forth herein.

115.   42 U.S.C. §1983 protects against the "deprivation of rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

116.   Hinote is a female and part of a protected class under the Equal Protection Clause.

117.   Barker is a "person" within the meaning of 42 U.S.C. §1983.

118.   Barker as a County Commissioner is an official with final policymaking authority of the County. Barker is liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the County caused the violations of Hinote's constitutional rights, and/or because County officials with final policymaking authority violated Plaintiff's constitutional rights. See *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

119.   Although she had a history of positive performance evaluations and exemplary work performance, Hinote was terminated from her position on March 17, 2022. This termination was motivated in whole or in part by Hinote's gender and in retaliation for Hinote's protected activity.

120.   Barker's retaliatory and discriminatory practices have caused Hinote harm, including severe emotional distress and lost wages and benefits.

121.   Barker acted under color of law when he directly deprived Hinote of her equal protection rights by intentionally discriminating against her because of her sex and retaliated against her form engaging in protected activity.

122.   As a direct and proximate result of Barker's unlawful actions, Hinote has suffered damages in amounts to be determined at trial.

123.   Accordingly, Barker has violated Hinote's rights as protected by 42 U.S.C. § 1983.

## COUNT VI – SECTION 1983 AND EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

### (AGAINST GLIDEWELL)

124.   Hinote incorporates Paragraphs 1-81 herein by references as if fully set forth herein.

125.   42 U.S.C. §1983 protects against the "deprivation of rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

126.   Hinote is a female and part of a protected class under the Equal Protection Clause.

127.   Glidewell is a "person" within the meaning of 42 U.S.C. §1983.

128.   Glidewell as a County Commissioner is an official with final policymaking authority of the County. Glidewell is liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the County caused the violations of Hinote's constitutional rights, and/or because County officials with final policymaking authority violated Plaintiff's constitutional rights. See *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

129.   Although she had a history of positive performance evaluations and exemplary work performance, Hinote was terminated from her position on March 17, 2022 for pretextual reasons. This termination was motivated in whole or in part by Hinote's gender.

130.   Glidewell's retaliatory and discriminatory practices have caused Hinote harm, including severe emotional distress and lost wages and benefits.

131.   Hinote acted under color of law when he directly deprived Hinote of her equal protection rights by intentionally discriminating against her because of her sex and retaliated against her for engaging in protected activity.

132.   As a direct and proximate result of Glidewell's unlawful actions, Hinote has suffered damages in amounts to be determined at trial.

133.   Accordingly, Glidewell has violated Hinote's rights as protected by 42 U.S.C. § 1983.

## COUNT VII – SECTION 1983 AND EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

### (AGAINST McCORMICK)

134.   Hinote incorporates Paragraphs 1-81 herein by references as if fully set forth herein.

135.   42 U.S.C. §1983 protects against the "deprivation of rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

136.   Hinote is a female and part of a protected class under the Equal Protection Clause.

137.   McCormick is a "person" within the meaning of 42 U.S.C. §1983.

138.   McCormick as a Board Commissioner is an official with final policymaking authority of the County. McCormick is liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the County and Board caused the violations of Hinote's constitutional rights, and/or because County and Board officials with final policymaking authority violated Plaintiff's constitutional rights. See *Monell v. Dep't of Social Servs*., 436 U.S. 658 (1978).

139.   Although she had a history of positive performance evaluations and exemplary work performance, Hinote was terminated from her position on March 17, 2022 for pretextual reasons. This termination was motivated in whole or in part by Hinote's gender.

140.   McCormick's retaliatory and discriminatory practices have caused Hinote damages outlined herein.

141.   McCormick acted under color of law when he directly deprived Hinote of her equal protection rights by intentionally discriminating against her because of her sex and retaliated against her for engaging in protected activity.

142.   As a direct and proximate result of Glidewell's unlawful actions, Hinote has suffered damages in amounts to be determined at trial.

143.   Accordingly, Glidewell has violated Hinote's rights as protected by 42 U.S.C. § 1983.

## COUNT VIII – CIVIL CONSPIRACY IN VIOLATION OF §1985

### (AGAINST BARKER,  GLIDEWELL, and McCORMICK)

144.   Hinote incorporates Paragraphs 1-81 herein by references as if fully set forth herein.

145.   Defendants Barker, Glidewell, and McCormick engaged in a conspiracy and unlawful agreement to deprive Hinote of her constitutional and statutorily protected right to not to suffer adverse employment actions on the basis of her gender and retaliation for engaging in protected activity.

146.   This conspiracy was motivated by animus with respect to Hinote's gender.

147.   The purpose of the conspiracy was to obtain Hinote's termination from the County on a pretextual basis, knowing that the true motivation was gender discrimination and retaliation in violation of federal law.

148.   The purpose and effect of the conspiracy was part of the same effort by all Defendants' effort to deprive Hinote of the substantive rights provided by the Fourteenth Amendment to the U.S. Constitution and by 42 U.S.C. § 1983 as alleged above.

149.    Accordingly, Barker, Glidewell, and McCormick have violated Hinote's rights as protected by 42 U.S.C. § 1985.

150.    As a direct and proximate result of the County's unlawful actions, Hinote has suffered damages in amounts to be determined at trial.

**WHEREFORE**, Hinote respectfully requests that the Court:

a.    Enter judgment in her favor against Defendants on all Counts;

b.    Declare pursuant to pursuant to 28 U.S.C. § 2201-2202 that the practices described in this Complaint exist and that they are unlawful;

c.    Award Plaintiff front pay and back pay with interest and other job benefits, including the value of health benefits, sufficient to redress all of the

d.    Award Plaintiff compensatory damages in an amount to be proven at trial sufficient to redress the harms that she suffered, including physical and emotional distress, humiliation, embarrassment, loss of income, and mental anguish;

e.    Award Plaintiff appropriate punitive damages in an amount to be proven at trial that would punish Defendants for their knowing, intentional, willful, and reckless disregard of clearly established federal constitutional and statutory rights as alleged herein;

f.    Award Plaintiff's reasonable attorneys' fees including under 42 U.S.C § 1988 and all taxable costs of this action; and

g.     Award such other and further relief in any form that this Court deems just and proper under the facts and circumstances as proved at trial.

## DEMAND TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues triable by a jury.

Respectfully submitted this 18th day of April, 2023,

*/s/ Mark L. Bonfanti*
Mark L. Bonfanti
Florida Bar No. 0010185
Bonfanti Law Firm, P.A.
983 Airport Road
Destin, Florida 32541
Phone: (850) 545-0038
mark@destinlawyers.com

*Attorney for Plaintiff*